IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARMA L. JILES,                :

    Plaintiff,            :

vs.                            :       CA 07-0718-C

MICHAEL J. ASTRUE,             :
Commissioner of Social Security,
                               :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 22 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 23 (order of reference)) Upon consideration of the administrative record, plaintiff's proposed report and

recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the May 15, 2008 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to a seizure disorder, chronic pain syndrome, mild osteoarthritis of the knees, fibromyalgia, depression, and medication side effects. The Administrative Law Judge (ALJ) made the following relevant findings:

> 2.   The medical evidence establishes that the claimant possesses the severe impairments of seizure disorder, chronic pain syndrome, and mild osteoarthritis of the knees; however, she does not possess an impairment or combination of impairments, listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3.   The claimant's allegations of pain and functional limitations to the degree alleged are not supported by the evidence in the record.
>
> 4.   It is the claimant's responsibility to provide medical evidence that supports her alleged disability. See Nathan L. Ellison v. Jo Anne B. Barnhart, No. 02-00223-CV-2-GMF-5

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

(11th Cir. October 1, 2003). The claimant has failed to meet this burden in this case.

5. At all times relevant to this decision, the claimant possessed the residual functional capacity to perform unskilled work activities at the medium exertional level on a regular and sustained basis as described in the body of this decision, with non-exertional limitations requiring that she avoid exposure to moving equipment or any environment that would be classified as dangerous. (20 CFR Section 416.967).

6. At the time she filed her application for Supplemental Security Income benefits, the claimant was 49 years old, which the Regulations define as a "younger person." The claimant is currently 53 years old, which the Regulations classify as a "person closely approaching advanced age."

7. The claimant has a "high school" level of education.

8. The claimant has no past relevant work experience.

9. Based on the exertional capacity for unskilled work at the medium exertional level as described above, and the claimant's age, education, and lack of past relevant work experience, the Administrative Law Judge concludes that, during the relevant period at issue in this case, the claimant was capable of making an adjustment to other work which existed in significant numbers in the national economy. Vocational expert testimony supports the conclusion that a significant number of jobs existed that a person could perform who possessed the capacities and limitations expressed in the Administrative Law Judge's hypothetical question, and giving the claimant the benefit of the doubt, most closely paralleled those of the claimant. The vocational expert witness provided examples of unskilled jobs available to such an individual as described in the Administrative Law Judge's hypothetical question at the medium exertional level. Examples given were kitchen helper, janitor, and assembler.

> 10. The claimant has not been under a "disability," as defined in the Social Security Act, as amended, at any time through the date of this decision.

(Tr. 34-35) The Appeals Council affirmed the ALJ's decision (Tr. 7-9) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In supplemental security income cases where the claimant has no past vocationally-relevant work, as here, it is the Commissioner's burden to prove that the claimant is capable of performing work which exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id*. (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). [2]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those medium jobs identified by the vocational expert ("VE"), is supported by substantial evidence. In this case, the plaintiff contends that the ALJ committed the following errors: (1) he erred in finding that she can perform medium work; (2) he erred in failing to find her fibromyalgia and depression to be severe impairments; and (3) he erred in failing to properly evaluate the severity of her pain. Because the ALJ erred in failing to find that plaintiff's fibromyalgia is a severe impairment, this Court need not reach the remaining issues raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  Basic work activities include

---

[2]    This Court's review of the Commissioner's application of legal principles, however, is plenary.  *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[3]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities

---

[3] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

> must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").

The ALJ in this case went to great lengths to find that plaintiff's fibromyalgia is a non-severe impairment. (Tr. 26-28)

> The impairment of fibromyalgia has been alleged as a severe impairment and the claimant contends that it is the primary cause of her pain. An impairment is severe within the meaning of the Regulations if it has lasted or can be expected to last for a continuous period of not less than 12 months and it imposes significant limitations on an individual's physical or mental abilities to perform basic work activities. Fibromyalgia is characterized by a gradual diffuse onset of stiffness and muscular pain. Although the pain associated with fibromyalgia can be aggravated by straining or overuse, it is most often of a constant nature. While it is recognized that fibromyalgia can be difficult to diagnose and cannot be detected through diagnostic tests, there are medically accepted clinical techniques that help to substantiate the existence of the impairment, but one must rely upon the treating physician's interpretation of the information obtained in clinical examination findings. Fibromyalgia by its very nature lacks objective evidence, elevating the importance of the claimant's complaints and

symptoms in accurately diagnosing the condition. However, accurate diagnosis of the condition does require some positive clinical examination findings such as joint swelling, muscle spasm, tenderness, or other signs or symptoms to substantiate the diagnosis, as well as a longitudinal treatment history, and laboratory studies ruling out other possible connective tissue disorders. It is generally recognized that fibromyalgia is typically diagnosed by exclusion of other significant, contributory or underlying diseases such as generalized osteoarthritis, rheumatoid arthritis, polymyositis, hypothyroidism, other connective tissue diseases, and psychogenic muscle pain and spasm. The Court of Appeals for the Eleventh Circuit noted that fibromyalgia "by its very nature lacks objective evidence," and, therefore, the importance of complaints and symptoms to this diagnosis are of great importance, as are treatment records, all of which are essential to a thorough evaluation of the consistency of the claimant's complaints on a longitudinal basis. (Stewart v. Apfel, 245 F.3d 793 (11th Cir. 2000)).

The undersigned Administrative Law Judge recognizes that, in the present case, the primary objective symptom of fibromyalgia exhibited by the claimant has been "multiple tender points" and, although her treating physician at Franklin Primary Health Center, Dr. Uzoije, noted that the claimant's symptoms were "consistent with fibromyalgia," the claimant has yet to receive a definitive diagnosis of that condition. At no time has Dr. Uzoije referred the claimant to a rheumatologist (a medical specialty that is generally recognized as being more adept at diagnosing and treating the condition of fibromyalgia) for additional testing and/or treatment, nor is there any documentary evidence that he has performed any diagnostic testing, such as an ANA profile, rheumatoid factor, or sedimentation rate analysis, to rule out other possible causes of the claimant's alleged symptomatology. Additionally, the claimant's treatment records from Franklin Primary Health Center document no consistent physical examination findings such as joint swelling, effusion, inflammation, or muscle spasm, and the severity,

frequency, and duration of the claimant's pain complaints, as documented by the treatment records, do not appear to be comparable to those customarily experienced in confirmed cases of fibromyalgia. For example, the treatment records reflect that the claimant's pain was relatively stable during 2001, 2002, and 2003 with medications and that she made no complaints of constant, diffuse musculoskeletal pain during that period of time. The claimant's complaints of generalized body pain were, at best, intermittent and Dr. Uzoije's interpretation of the claimant's presentation during the relevant period under consideration reflects that the claimant's pain was "not disabling with medications." Additionally, Dr. Uzoije made other statements in the treatment records such as "fibromyalgia stable" and "flare-up of fibromyalgia," indicating that the claimant's pain was not as severe and constant as she has alleged.

Given the lack of evidence of objective clinical examination findings and symptomatic complaints consistent with a diagnosis of fibromyalgia, the Administrative Law Judge does **not** find that the claimant's allegations with respect to the above physical problems have been established as causing any actual 12-month functional work-related limitation and that these (sic) alleged impairment is not severe. (20 CFR Sections 416.920, 416.921, and 416.922).

(*Id.*)

The record in this case is replete with evidence establishing that the claimant suffers from fibromyalgia,[4] an impairment which, not surprisingly,

---

[4] "'Fibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue and tenderness. . . . Pain and tenderness are the defining characteristics of fibromyalgia. . . . There are no laboratory or other diagnostic tests for fibromyalgia so it must be diagnosed based on patient symptoms.'" *Wuerth v. Astrue*, 2008 WL 680211, *5 n.7 (M.D. Fla. 2008) (citation omitted).

is routinely recognized as a severe impairment. *See, e.g., Britton v. Astrue*, 521 F.3d 799, 801 (7th Cir. 2008) ("[T]he ALJ considered Britton's medical evidence and found that her hepatitis, **fibromyalgia**, degenerative disc disease of the lumbar spine, **chronic pain syndrome**, osteopenia, depression, and anxiety constituted 'severe' impairments."); *Donathan v. Astrue*, 2008 WL 134119, *3 (9th Cir. 2008) (Graber, C. J., dissenting) ("At step two of the sequential evaluation process, the administrative law judge [] found that Claimant's **fibromyalgia** constitutes a 'severe' impairment."); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 (6th Cir. 2007) ("On at least one occasion, we have recognized that **fibromyalgia** can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."); *Miller v. Astrue*, 233 Fed.Appx. 590, 591 (8th Cir. 2007) ("After a hearing, an administrative law judge [] determined that [] Miller's impairments of **fibromyalgia** and lumbar-spine-fracture residuals were severe, but did not meet or equal a listed impairment[.]"); *Hall v. Commissioner of Social Security*, 218 Fed.Appx. 212, 214 (3rd Cir. 2007) ("The ALJ found that Hall suffers from the severe impairments of **fibromyalgia** and interstitial cystitis, but that those impairments, alone or in combination, do not meet or equal the

criteria of any of the listed impairments."); *Beasley v. Barnhart*, 191 Fed.Appx. 331, 333 (5th Cir. 2006) ("In February 2000, after conducting the five-step analysis for determining whether a claimant has a disability . . . the ALJ found . . . [that Beasley] had severe impairments of arthritis, **fibromyalgia**, and hypertension[.]"); *Webster v. Barnhart*, 187 Fed.Appx. 857, 858 (10th Cir. 2006) ("After conducting a hearing at which both Webster and a vocational expert [] testified, the administrative law judge [] issued a decision finding that Webster, who was then 56 years old, suffered from **fibromyalgia**, chronic fatigue syndrome, osteoarthritis, bursitis, gastroesophageal disease, and depression, that these impairments were severe, and that they prevented her from performing her past relevant work as a social worker."); *Humphries v. Barnhart*, 183 Fed.Appx. 887, 889 (11th Cir. 2006) ("Based on the medical evidence, the ALJ found that Humphries had a severe combination of impairments–**fibromyalgia**, degenerative disc disease of the lumbar spine, dysthymic disorder, and borderline intellectual functioning."); *Phillips v. Barnhart*, 357 F.3d 1232, 1237-1238 (11th Cir. 2004) ("As for the second step, the ALJ stated that Phillips 'has Sjögren's syndrome and **fibromyalgia**, which I find to be "severe" impairments.'"). In discussing fibromyalgia, the Eleventh Circuit has recognized that this condition "often

lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). This is because the hallmark of fibromyalgia is "a lack of objective evidence[.]" *Id.*; *see also Stewart v. Apfel*, 245 F.3d 793, 2000 U.S. App. LEXIS 33214, at *9, n.4 (11th Cir. 2000); *Dickson v. Astrue*, 2008 WL 384548, *7 (N.D. Fla. 2008) ("In *Stewart*, the court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence."). Indeed, "'physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2nd Cir. 2003) (citations omitted)); *see also Wuerth, supra*, at *6 n.16 (favorably citing *Green-Younger*).

With this understanding of fibromyalgia, the Court considers whether the reasons the ALJ offers for finding this condition to be non-severe in the instant case are substantially supported. The ALJ's decision offers these reasons for finding plaintiff's fibromyalgia to be a non-severe impairment: (1) claimant has yet to receive a definitive diagnosis of fibromyalgia, Dr. Prince Uzoije, Jiles' treating physician, noting only that her symptoms were

12

"'consistent with fibromyalgia[;]'" (2) Dr. Uzoije at no time "referred the claimant to a rheumatologist . . . for additional testing and/or treatment, nor is there any documentary evidence that he has performed any diagnostic testing, such as an ANA profile, rheumatoid factor, or sedimentation rate analysis, to rule out other possible causes of the claimant's alleged symptomatology[;]" and (3) "claimant's treatment records from Franklin Primary Health Center document no consistent physical examination findings such as joint swelling, effusion, inflammation, or muscle spasm, and the severity, frequency, and duration of the claimant's pain complaints, as documented by the treatment records, do not appear to be comparable to those customarily experienced in confirmed cases of fibromyalgia." (Tr. 27)

While it is true that on one occasion in late 1999 and another occasion in early 2000, Dr. Uzoije noted that Jiles' symptoms were consistent with fibromyalgia (Tr. 282& 289), throughout 2001, 2002, 2003, and 2004, Uzoije consistently diagnosed plaintiff as suffering from fibromyalgia and noted multiple tender points upon examination[5] (Tr. 269-281, 297-313, 340-343,

---

[5] *See Turner v. Astrue*, 2008 WL 595943, *11 (N.D. Fla. 2008) ("[A] medically accepted way of diagnosing fibromyalgia involves testing for focal tender points."); *Harris v. Astrue,* 2008 WL 595953, *11 (N.D. Fla. 2008) ("[T]he Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, '[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points' is an example of a medical sign that establishes

345-356 & 415-429). Dr. Uzoije's diagnosis has been echoed by other physicians of record (*see* Tr. 317, 401 & 413), including the Commissioner's own non-examining, reviewing physician (Tr. 327). Therefore, contrary to the ALJ's assertion, there has been a definitive diagnosis of fibromyalgia in this case; the record is replete with such evidence. This was an erroneous reason for finding plaintiff's fibromyalgia to be non-severe.

It is impossible for this Court to intelligently discuss the ALJ's second reason for finding non-severity, namely Dr. Uzoije's failure to refer plaintiff to a rheumatologist for additional testing and his additional failure to perform diagnostic testing to rule out other possible causes for plaintiff's symptoms, because the record fails to contain the professional qualifications for any of the physicians who examined or treated plaintiff or who examined plaintiff's records prior to rendering an opinion regarding plaintiff's residual functional capacity. Obviously, if any one of the physicians of record was a rheumatologist, such evidence would undermine the ALJ's reasoning in this regard. More importantly, however, this Court is unaware of any requirement in this Circuit that testing by a rheumatologist or testing for other conditions are necessary to confirm a diagnosis of fibromyalgia or, otherwise, to confirm

---

the existence of a medically determinable impairment.").

that fibromyalgia is a severe impairment. Accordingly, the ALJ's second reason for finding Jiles' fibromyalgia non-severe is erroneous.

Finally, the ALJ's reliance upon a lack of objective findings to corroborate the disease is erroneous since the hallmark of fibromyalgia is lack of objective evidence. *See Moore, supra,* 405 F.3d at 1211; *Harris, supra,* at *10.[6]

Based upon the foregoing, this Court concludes that the reasons offered by the ALJ for finding Jiles' fibromyalgia to be a non-severe impairment are not supported by substantial evidence. *See Harris, supra,* at *10-11; *Dickson, supra,* at *7-8. Accordingly, this case is **REMANDED** to the Commissioner for further consideration not inconsistent with this decision.[7]

---

[6] The ALJ conclusorily notes that "the severity, frequency, and duration of the claimant's pain complaints, as documented by the treatment records, do not appear to be comparable to those customarily experienced in confirmed cases of fibromyalgia." (Tr. 27) This Court has no way of knowing the pain customarily experienced in confirmed cases of fibromyalgia and the ALJ has done nothing to educate the Court to that end. Therefore, this reasoning by the ALJ offers nothing in support of the conclusion that plaintiff's fibromyalgia is a non-severe impairment.

[7] In his proposed report and recommendation, the Commissioner implicitly argues that it was harmless error for the ALJ to find plaintiff's fibromyalgia to be a non-severe impairment in light of his finding that plaintiff's chronic pain syndrome is a severe impairment. (*See* Doc. 20, at 14, n.7 ("[W]hile finding that Plaintiff's alleged fibromyalgia was not a 'severe' impairment, giving her every benefit of [the] doubt, the ALJ did find that Plaintiff's chronic pain syndrome was a 'severe' impairment[.]")) Thus, defendant wants this Court to accept as a controlling premise that which the Appeals Council accepts, namely that chronic pain syndrome and fibromyalgia are simply different names for the same impairment. (*Compare id. with* Tr. 8

**CONCLUSION**

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g),[8] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C.

---

("[T]he Administrative Law Judge's decision complies with Social Security Ruling 99-2p as to the evaluation of the claimant's chronic pain syndrome/fibromyalgia.")) Even if the ALJ's decision had not convinced the undersigned that chronic pain syndrome and fibromyalgia are distinct impairments, case law would. *See, e.g., Britton, supra*, 521 F.3d 801 (finding plaintiff's severe impairments included both fibromyalgia and chronic pain syndrome). In this regard, it is particularly noteworthy that in analyzing a claimant's pain complaints arising from an underlying condition of fibromyalgia it would be improper to focus on a lack of objective findings, *see Moore, supra*, 405 F.3d at 1211 ("Because the impairment's hallmark is [] a lack of objective evidence, we reversed an ALJ's determination that a fibromyalgia claimant's testimony was incredible based on the lack of objective evidence documenting the impairment."); *cf. Turner, supra,* at *12 ("[I]n concluding that it was a non-disabling impairment, the ALJ impermissibly focused on the lack of objective findings corroborating the disease."), whereas such focus can be made where the underlying condition is chronic pain syndrome (*see* Tr. 31 ("[P]hysical examinations have failed to document any clinical findings such as loss of range of motion, muscle weakness, muscle spasm, muscle atrophy, joint swelling or deformity, or neurological deficits and the disparity between the objective medical evidence in the record and the claimant's symptomatic allegations is considerable."). Accordingly, a harmless error analysis simply does not work under these circumstances.

[8]    Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

§ 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

  **DONE** this the 23rd day of May, 2008.

     s/WILLIAM E. CASSADY
    **UNITED STATES MAGISTRATE JUDGE**